IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Amanda Burns, | : | |
| Plaintiff, | : | Civil Action 2:13-cv-1045 |
| v. | : | Judge Smith |
| Carolyn W. Colvin, | : | Magistrate Judge Abel |
| Commissioner of Social Security, | | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION**

Plaintiff Amanda Burns brings this action under 42 U.S.C. §§ 405(g) and

1383(c)(3) for review of a final decision of the Commissioner of Social Security denying

her application for Supplemental Security Income benefits.  This matter is before the

Magistrate Judge for a report and recommendation on the administrative record and the

parties' merits briefs.

**Summary of Issues.**  Plaintiff Burns maintains that she became disabled on Jan-

uary 1, 2011, at age 30, due to post traumatic stress disorder, depression, "childhood

trauma" and stomach problems.  (*PageID* 250.)

Plaintiff argues that the decision of the Commissioner denying benefits should be

reversed because:

- The administrative law judge failed to craft a residual functional capacity
that fairly accounts for all of limitations resulting from plaintiff's severe
impairments, particularly mental health disorders causing a "moderate"
limitation to concentration, persistence or pace; and

- The administrative law judge's consideration of the opinion evidence is
flawed and not supported by substantial evidence. The administrative law

judge erred by inappropriately discounting the opinion of two consulting examiners, Dr. Miller and Dr. Vasilakis.

**Procedural History.**  Plaintiff Burns protectively filed her application for supple-mental security income on April 27, 2011, alleging that she became disabled on January 1, 2011, at age 30.  (*PageID* 209-14.)  The application was denied initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an administrative law judge.  On December 10, 2012, an administrative law judge held a video hearing at which plaintiff, represented by counsel, appeared and testified.  (*PageID* 88-102.)  A vocational expert also testified.  (*PageID* 102-09.)  On January 4, 2013, the administrative law judge issued a decision finding that Burns was not disabled within the meaning of the Act.  (*PageID* 67-78.)  On August 24, 2013, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security.  (*PageID* 53-57.)

**Age, Education, and Work Experience.**  Burns was born on March 2, 1980.  (*PageID* 88, 209.)  She has a GED.  (*PageID* 98-99, 251.)  Burns has past relevant work as a baker, restaurant worker, cashier, machine operator and house cleaning.  (*PageID* 104, 251.)  She last worked in 2011 as a housekeeper.  (*PageID* 100-01.)

**Plaintiff's Testimony.**  The administrative law judge fairly summarized Burns's testimony as follows:

> The claimant testified that she has difficulty thinking around others.  The claimant testified that she has not received treatment for her mental con-ditions until recently.  She stated that she has sought treatment in the past and it has not gone well.  She testified that she does not feel listened to or

2

taken seriously.  The claimant testified that counseling has been recommended, and she knows it needs to be done, but does not want to follow through.  The claimant testified that she is on medication for her mood and anxiety, but does not feel they are helping.  The claimant testified that she does not leave the house or go anywhere.

The claimant testified that her drug use ended in May of 2009.  She testified to using heroin, cocaine, marijuana and alcohol.  She testified to occasional marijuana and alcohol use.

(*PageID* 75.)

**Medical Evidence of Record.**  The administrative law judge's decision fairly sets out the relevant medical evidence of record.  This Report and Recommendation will only briefly summarize that evidence.

State of Ohio, Department of Rehabilitation and Corrections

Burns was incarcerated twice during the period from September 21, 1999 through August 12, 2002.  At the age of 17, she was charged with obstruction of justice and spent 18 months in jail.  She spent another 11 months incarcerated in 2001 for receiving stolen property.  (*PageID* 296-498.)  During her initial mental health screen, it was determined that no mental health services were needed.  (*PageID* 341.)  Burns also reported during her initial intake that she smoked 5-6 joints everyday and drank a bottle of alcohol every day.  (*PageID* 347.)  On mental health/substance use screenings during her incarceration, Burns reported self-injurious behaviors when she was age 12. (*PageID* 328, 338.)

3

A referral request for counseling on November 8, 1999 showed a Dr. Harper was concerned about Burns's issues regarding domestic violence, she appeared depressed and was adjusting poorly.  Burns was diagnosed with an adjustment disorder.  (*PageID* 317.)

Berger Hospital

In September 2008, Burns was brought to the emergency room by squad.  (*PageID* 682-723.)  It was the second anniversary of the death of her child and she had overdosed on prescription medication.  She was admitted to the intensive care unit. (*PageID* 684-90.) Burns was to follow-up with Scioto Paint Valley following discharge.  (*PageID* 696.)

The Recovery Center

Burns presented to the Recovery Center on May 15, 2009, on self referral after overdosing on pills and alcohol.  Burns was seeking services to address her addiction and mental health problems.  She felt "overwhelmed" with grief and experienced feelings of depression, anxiety and irritability.  She endorsed a history of violence, both self-inflicted and inflicted on others, and described having numerous jobs in the previous five years with an inability to maintain employment due to absenteeism, termination, and disciplinary actions for fighting with other employees.  It was recommended that Burns attend counseling every week for 9 months, and a 12-step program.  (*PageID* 499-512.)  Burns was terminated from the program for nonparticipation.  (*PageID* 586-88.)

Fairfield Medical Center

In November 2010, Burns was admitted to the hospital for intractable nausea and vomiting, and left upper quadrant pain.  (*PageID* 536-74.)  Elaine Lewis, M.D., the hospital

4

physician, noted Burns had a history of opiate and narcotic addiction.  Upon admission,

Burns's drug screen was positive for cannabis and benzodiazepines.  Dr. Lewis opined it

was necessary to limit Burns's use of controlled substances and noted this was her second

reported relapse.  (*PageID* 539.)

> Marc Miller, Ph.D.

Dr. Miller performed a consultative psychological examination at the request of

the Ohio Bureau of Disability Determination on August 16, 2011.  (*PageID* 589-93.)

Burns's chief complaint was "I've got a lot of psychological problems.  I've been in and

out of counseling since age 10."  (*PageID* 589.)  Dr. Miller noted a history of drug

problems for many years and history of incarceration.  (*PageID* 590.)  On mental status

examination, Dr. Miller noted Burns's behavior indicated a depressed individual.  She did

not demonstrate any obsessions or compulsions.  She reported increased stress due to

lack of income to take care of her children.  Dr. Miller assessed Burns's depression as a 7-8

out of 10, and her anxiety was an 8 out of 10.  (*PageID* 591.)  Dr. Miller noted Burns's

insight and judgment to be good, she reported difficulty making decisions and moti-

vation was poor.  (*PageID* 592.)   He noted that Burns's concentration was fair to poor, and

her abstract thinking was poor.  Burns reported that she does not like to be around other

people.  However, Dr. Miller found her social adaptation to be fair.  Dr. Miller noted that

Burns understood the need for mental health treatment.  (*Id.*)

As to her daily activities, Burns related that she goes to bed at all hours.  She eats

one meal per day.  She takes care of her children.  She does not have a driver's license. She

stays in the home and has no community activities.  She does not watch television. She prepares the meals, laundry, cleaning, and dishes.  She also grocery shops and takes care of her own money management.  (*PageID* 592.)

Dr. Miller opined that Burns had no difficulty understanding, remembering, and carrying out one-to-two step job instructions; her ability to interact with others was impaired as well as her attention and concentration.  Burns's ability to deal with the stress and pressures of work activity was significantly impaired.

He diagnosed a dysthymic disorder, moderate to severe; generalized anxiety disorder, moderate; attention deficit disorder; and polysubstance abuse in remission. Burns was assessed a Global Assessment of Functioning (GAF) score of 45, indicative of a serious impairment.  (*PageID* 593.)

<u>Karla Voyten, Ph.D./Marianne Collins, Ph.D.</u>  After her review of the record on August 19, 2011, state agency psychologist, Dr. Voyten, reported that medically determinable impairments of organic mental disorder, affective disorder, anxiety-related disorder, a personality disorder and substance-addiction disorder were present, but were not severe.  (*PageID* 118-19.)  Dr. Voyten opined that Burns was mildly limited in her activities of daily living, moderately limited in maintaining social functioning and in maintaining concentration, persistence or pace, and no episodes of decompensation.  (*PageID* 119.)  Dr. Voyten further determined that the evidence did not establish the presence of the "C" criteria.  (*Id.*)  Dr. Voyten opined that Burns could complete simple, routine tasks in environments where duties did not change frequently and could have superficial social

6

interaction.  (*PageID* 120-22.)  On December 9,  2011, state agency reviewing psychologist, Melanie Bergsten, Ph.D. opined that Burns could have superficial interaction and could perform work tasks that were relatively static with changes that were explained.  (*PageID* 131-32.)

William Vasilakis, Ph.D.

Burns was evaluated by psychologist, Dr. Vasilakis on behalf of Job and Family Services, in May 2012.  (*PageID* 641-43.)  Burns reported that that she was scheduled to see a counselor soon but that she was dreading the upcoming appointment, relating that during past experiences "the mental health field hasn't helped me."  (*PageID* 642.) Burns described panic attacks and episodes of passing out.  Her fiancé had recently been killed in Afghanistan.  She was overwhelmed and angry.  She explained that she had turned back to heroin after losing her daughter several years before, but that she had been off drugs for three years.  Dr. Vasilakis diagnosed Burned with bipolar II, post traumatic stress disorder, attention deficit hyperactivity disorder, and panic disorder with agoraphobia.  (*Id.*) He opined that Burns was markedly impaired in most areas of understanding and memory, social interaction, and adaptation.  He stated that these limitations would last between eight and eleven months.  (*PageID* 641.)

New Horizons

Burns began receiving mental health treatment at New Horizons Youth and Family Services on July 24, 2012.  (*PageID* 649-52.)  At the time of her initial evaluation, Burns reported a "life long history of depression anxiety, panic attacks and mood swings.  Has

7

been in foster care for most of her life.  Says she been feeling low and down most or the

time.  Has been feeling nervous and anxious most of the time. Has been having panic

attacks almost every day.  She is afraid of going out in public and stays mostly indoors.

Says she is feeling irritable and edgy with severe mood swings.  She is sleeping 3-4 hours

per night.  No mania or psychosis is noted.  Denies suicidal or homicidal ideas or plans.

Denies drug or alcohol use." (*PageID* 649.)  On mental status examination, Burns was well

groomed, her demeanor was withdrawn, average eye contact, clear speech, racing

thoughts, irritable mood and full affect.  (*PageID* 650.)  Burns was diagnosed with bipolar

disorder, mixed; and an anxiety disorder, NOS.  (*PageID* 651.)  Burns received therapy and

was also treated with medication through at least November 27, 2012.  (*PageID* 645-48,

746-50.)

     **Administrative Law Judge's Findings.**  The administrative law judge found that:

1.     The claimant has not engaged in substantial gainful activity since
April 27, 2011, the application date (20 CFR 416.971 *et seq*.).

2.     The claimant has the following severe impairments: bipolar
disorder, anxiety disorder and polysubstance abuse (20 CFR
416.920(c)).

3.     The claimant does not have an impairment or combination of
impairments that meets or medically equals one of the listed
impairments in 20 CFR Part  404, Subpart P, Appendix 1 (20 CFR
416.920(d), 416.925 and 416.926).

4.     After careful consideration of the entire record, [the administrative
law judge] finds that the claimant has the residual functional cap-
acity to perform a full range of work at all exertional levels but with
the following nonexertional limitations: the claimant can per-form
simple routine tasks in a relatively static environment with few

changes that are explained; and can have occasional and super-
ficial interaction with others.

5.    The claimant is capable of performing past relevant work as a
      housekeeper. This work does not require the performance of
      work-related activities  precluded by the claimant's residual
      functional capacity (20 CFR 416.965).

6.    The claimant has not been under a disability, as defined in the
      Social Security Act, since April 27, 2011, the date the application
      was filed (20 CFR 416.920(f)).

(*PageID* 72-78.)

**Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings

of the Commissioner as to any fact, if supported by substantial evidence, shall be con-

clusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389,

401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)).  It is

"'more than a mere scintilla.'"  *Id.  LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir.

1976).  The Commissioner's findings of fact must be based upon the record as a whole.

*Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366

(6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining

whether the Commissioner's decision is supported by substantial evidence, the Court

must "'take into account whatever in the record fairly detracts from its weight.'"  *Beavers*

*v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.**  Burns argues that the decision of the Commissioner denying benefits should be reversed because:

• The administrative law judge failed to craft a residual functional capacity that fairly accounts for all of limitations resulting from plaintiff's severe impairments, particularly mental health disorders causing a "moderate" limitation to concentration, persistence or pace.  Plaintiff argues that pursuant to *Ealy v. Comm'r of Social Security*, 594 F.3d 504 (6th Cir. 2010), the administrative law judge determined that Burns suffered from moderate limitations in concentration, persistence or pace, and then erroneously limited her to simple, routine work, without fairly accounting for the additional disturbance to concentration, persistence and pace.  (*See* Doc. 11 at *PageID* 765.)

• The administrative law judge erred by inappropriately discounting the opinion of two consulting examiners, Dr. Miller and Dr. Vasilakis.  According to plaintiff, the administrative law judge afforded greater weight to the opinions of non-examining state agency reviewers who had access to only a portion of the medical evidence and without good reason discounted the work-preclusive opinions of two examining psychologists.  (*Id.* at *PageID* 766-69.)

**Analysis.**

10

During the sequential analysis, the administrative law judge determined Burns's residual functional capacity. 20 C.F.R. §§ 416.920(a)(4), 416.945. Residual functional capacity is a measure of what an individual can do despite the limitations imposed by her impairments. 20 C.F.R. § 416.945. Here, the administrative law judge found Burns could perform a range of work that accommodated a variety of mental limits. (*PageID* 74.) According to the administrative law judge, Burns can perform simple routine tasks in a relatively static environment with few changes that are explained; and can have occasional and superficial interaction with others. (*Id.*) As explained in his decision, in formulating Burns's functional capacity assessment, the administrative law judge considered the opinions and findings of the examining and reviewing medical sources, as well as other evidence of Burns's activities and treatment. (*PageID* 74-77.)

The Social Security regulations, rulings, and Sixth Circuit precedent provide that the administrative law judge is charged with the final responsibility in determining a claimant's residual functional capacity. *See e.g.,* 20 C.F.R. § 416.927(d)(2) (the final responsibility for deciding the residual functional capacity "is reserved to the Commissioner."). Moreover, the Social Security Act and agency regulations require an administrative law judge to determine a claimant's residual functional capacity based on the evidence as a whole. 42 U.S.C. § 423(d)(5)(B), 1382c(a)(3)(H)(i)(incorporating § 423(d) for Title XVI); 20 C.F.R. § 416.945(a) ("the administrative law judge . . . is responsible for assessing your residual functional capacity"). As the court recognized in *Henderson v. Comm'r of Soc. Sec.,* 2010 WL 750222, No. 1:08-cv-2080 (N.D. Ohio March 2, 2010), pur-

11

suant to the regulations, the administrative law judge is charged with evaluating several factors in determining the residual functional capacity, including the medical evidence (not limited to medical opinion testimony), and the claimant's testimony. *Id.* at *2, *citing Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004); Social Security Ruling 96-5p; Social Security Ruling 96-8p.

An administrative law judge's residual functional capacity assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant non-medical evidence regarding what work a claimant is capable of performing. Social Security Ruling 96-5p. Social Security Ruling 96-8p instructs that the administrative law judge's residual functional capacity assessment must be based on all of the relevant evidence in the case record, including factors such as medical history, medical signs and laboratory findings, the effects of treatment, daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, and evidence from attempts to work. Social Security Ruling 96-8p.

20 C.F.R. § 416.927(d)(2) also explains that "[a]lthough we consider opinions from medical sources on issues such as your residual functional capacity, . . . the final responsibility for deciding these issues is reserved to the Commissioner." The regulations do not require an administrative law judge to rely solely upon medical opinions when formulating a residual functional capacity, but instead explicitly require an administrative law judge to evaluate medical opinions based on their consistency with and support from "medically acceptable clinical and laboratory diagnostic techniques."

12

20 C.F.R. § 416.927(c)(2), (3), (4).  Indeed, as the Sixth Circuit has held, physician op-

inions "are only accorded great weight when they are supported by sufficient clinical

findings and are consistent with the evidence." *Cutlip v. Sec'y of Health & Human Servs.*,

25 F.3d 284, 287 (6th Cir. 1994).

The administrative law judge here gave considerable weight to medical opinion

evidence from Drs. Voyten and Bergsten, state agency reviewing psychologists, who

completed mental residual functional capacity assessments in August and December

2011. (*PageID* 118-22, 131-32.)  The administrative law judge accepted Dr. Voyten's

opinion that Burns can complete simple routine tasks in environments where duties do

not change frequently and that Burns was capable of superficial social interaction.

(*PageID* 76.)  The administrative law judge further noted that Dr. Voyten determined

that Burns exhibited poor credibility, reporting no drug use when the medical record

showed otherwise.  (*Id.*)  The administrative law judge accommodated this opinion with

his general restriction for "simple routine tasks in a relatively static environment with

few changes that are explained; and can have occasional and superficial interaction with

others."  (*PageID* 74.)  The Social Security regulations and rulings expressly recognize

that state agency psychologists are "highly qualified psychologists who are also experts

in Social Security disability evaluation."  *See* 20 C.F.R. § 416.927(e)(2)(i); Social Security

Ruling 96-6p; *see Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 651 (6th Cir. 2006) (en banc)

(affirming administrative law judge's decision adopting reviewing physician's opinion

over treating physician's opinion).

The administrative law judge also considered Burns's subjective complaints in evaluating her residual functional capacity, but found they were not entirely credible. (*PageID* 75.)  The Sixth Circuit has held that it accords great deference to an administrative law judge's credibility assessment, particularly because the administrative law judge has the opportunity to observe the demeanor of a witness while testifying.  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).  It is not the province of the reviewing court to "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  The administrative law judge expressly stated that he had considered Burns's subjective complaints in accordance with the requirements of Social Security Ruling 96-4p, 96-7p, and 20 C.F.R. § 416.929 (*PageID* 74), and set forth the various factors that he had considered in his credibility assessment, including specific citations to medical records and medical source opinions, objective clinical findings, treatment regimen, medication use, Burns' drug and alcohol use, observations at the hearing and activities. (*PageID* 75-77.)

Relying on *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010), plaintiff argues that the administrative law judge determined that Burns suffered from moderate limitations in concentration, persistence or pace, and then erroneously limited her to simple, routine work, without fairly accounting for the additional disturbance to concentration, persistence and pace.  (*See* Doc. 11 at *PageID* 765.)  Dr. Voyten did determine that Burns

14

has moderate difficulties in concentration, persistence or pace (*PageID* 119), however

when she explained in "narrative form," Dr. Voyten found

> Clmt has extensive hx of drug use. No periods of extended decompen-
> sation. She currently reports sobriety since 2009 but there are tox screens
> from 2010 indicating positive for opiates. She is a frequent person in the
> ER requesting addictive medications. Clmt has been [through] rehab but
> there is indication of lack of participation. Clmt denies current [treatment].
> Clmt can complete SRT in environments where duties do not change
> frequently.

(*PageID* 121.)  Other courts that have addressed this issue have concluded that Section I

of the form is merely a worksheet for the evaluator and does not constitute the evaluat-

or's residual functional capacity assessment.  *See Velez v. Comm'r of Soc. Sec.*, 2010 WL

1487599, *6, (N.D. Ohio Mar. 26, 2010) ("In general, . . .the administrative law judge is

not required to include the findings in Section I in formulating residual functional

capacity."); *Kachik v. Astrue*, 2010 WL 3852367, *6 (W.D. Pa. Sept. 27, 2010) (citing *Liggett

v. Astrue*, 2009 WL 189934,*8 (E.D. Pa. 2009)); *Berry v. Astrue*, 2009 WL 50072, *15 (W.D.

Va. Jan. 7, 2009); *Norris v. Astrue*, 2008 WL 4911794, *16 (E.D. N.C. Nov. 14, 2008); *Mal-

ueg v. Astrue*, 2007 WL 5480523, **6-7 (W.D. Wis. May 30, 2007). The form itself makes

clear that it is the narrative of the form that embodies the actual assessment and this

Court agrees with those other courts that have held that an administrative law judge is

not required to expressly include the Section I notations in formulating a claimant's

residual functional capacity.  The administrative law judge did not, therefore, err in crafting Burns's mental residual functional capacity.

The Court will next address Burns's arguments concerning the weight assigned to the medical source opinions.  Burns contends that the administrative law judge erred by inappropriately discounting the opinion of two consulting examiners, Dr. Miller and Dr. Vasilakis.  (Doc. 11 at *PageID* 766-69.)  In order to determine whether the administrative law judge acted properly in disagreeing with a medical source, the Court must first determine the medical source's classification.  Of the three types of medical sources-nonexamining sources, nontreating (but examining) sources, and treating sources - Dr. Miller and Dr. Vasilakis were the second.  *See* 20 C.F.R. § 416.902; *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007) ( "A 'nontreating source' (but examining source) has examined the claimant 'but does not have, or did not have, an ongoing treatment relationship with' [her].").  In contrast, Dr. Voyten and Dr. Bergsten were "nonexamining sources." *See Smith,* 482 F.3d at 875 ("A 'nonexamining source' is 'a physician, psychologist, or other acceptable medical source who has not examined [the claimant] but provides a medical or other opinion in [the claimant's] case.' ").

The Social Security Administration gives the most weight to opinions from a claimant's treating source; accordingly, an administrative law judge is procedurally required to "give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion." (*Id.*)  However, this requirement only applies to *treating* sources.  (*Id.* at 876.)  With regard to nontreating, but examining,

16

sources, the agency will simply "[g]enerally [ ] give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined" her.  20 C.F.R. § 416.927(c)(1); *see also Smith,* 482 F.3d at 875.  Because Dr. Miller and Dr. Vasilakis should not have been afforded controlling weight, in order to determine how much weight to give Dr. Miller's and Dr. Vasilakis's opinions, the Regulations require administrative law judges to weigh their opinions with the factors - supportability, consistency, specialization, etc. -described in 20 C.F.R. §416.927(c).

The administrative law judge gave little weight to Dr. Vasilakis's opinion because he failed to address or cite the reasons behind his specified limitations; the treatment records related to Burns's counseling did not indicate signs or symptoms that supported marked limitations; Burns's mental status examinations generally showed Burns to have full affect as well as fair insight and judgment; and Dr. Vasilakis opined that Burns's mental limitations were expected to last between eight and 11 months. (*PageID* 77.)

Likewise, the administrative law judge afforded "less than full weight" to the opinion of Dr. Miller because he relied upon Burns's subjective complaints in rendering his opinion and Burns has demonstrated repeated indications of poor credibility; and Burns's reported level of activity showed a higher level of functioning than assessed by Dr. Miller.  (*Id.*)  The administrative law judge cited the absence in the record of other evidence that Burns lacked the mental ability to perform any work activity.  The administrative law judge noted that Burns had not received any mental health treatment, nor

17

had she been on any medication. (*Id.*) The record shows that the administrative law judge considered relevant factors in its determination to credit Dr. Voyten and Dr. Bergsten's assessments over Dr. Miller and Dr. Vasilakis. The administrative law judge agreed with Dr. Voyten who found Burns exhibits poor credibility as she reported to Dr. Miller that she has not used drugs since 2009 and the emergency room reports show positive opiate test in 2010. (*PageID* 76 citing to *PageID* 119.) Dr. Voyten also gave weight to Dr. Millers "somewhat [vague] opinions." (*PageID* 120.)

Plaintiff argues that the administrative law judge's decision to accept the opinions of the state psychologists over those of the consulting psychologists runs afoul to the opinion issued by the Sixth Circuit in *Gayheart v. Commissioner of Social Sec.*, 710 F.3d 365 (6th Cir. 2013). The Court held in relevant part that in evaluating medical source evidence and opinions, the administrative law judge commits reversible error by subjecting the opinions of the claimant's treating physicians to closer scrutiny than the opinions of the state agency physicians. *Gayheart*, 710 F.3d at 375-76. The Court observed, the administrative law judge rejected the opinions of the plaintiff's treating physicians for alleged internal inconsistencies and for being inconsistent with the record as a whole while at the same time accepting the opinions of the state agency physicians that suffered from the same flaws. (*Id.*)

The Court concludes, however, that *Gayheart* does not apply in this case because the record does not reflect that the administrative law judge scrutinized the opinions of the consulting psychologists more closely than the opinions of the state agency con-

sultants or applied double standards in his evaluation of the medical evidence.  First, the record indicates, Burns arguably had no treating psychologist.  Second, some of the limitations indicated by Dr. Miller were incorporated into the administrative law judge's mental residual functional capacity, such as limiting Burns to jobs with simple routine tasks in a relatively static environment with few changes that are explained and can have occasional and superficial interaction with others based on her reported difficulties handling stress and being around others as reported to Dr. Miller during his consultive evaluation.  *See PageID* 77, 592-93.  The fact of the matter is that because there was no medical source with a longitudinal picture of Burns's mental health, each psychological medical source opinion was necessarily based on a limited amount of evidence.  Consequently, the Court does not find that the administrative law judge's evaluation of the medical evidence is contrary to *Gayheart*.  The administrative law judge's decision to place more weight on the conclusions of Dr. Voyten and Dr. Bergsten than those of Dr. Miller and Dr. Vasilakis is supported by substantial evidence.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED.**  It is **FURTHER RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED** and that defendant's motion for summary judgment be **GRANTED.**

If any party objects to this Report and Recommendation, that party may, within

19

fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).


 s/Mark R. Abel                        
United States Magistrate Judge